

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00254-CR

**ALEJANDRO LOPEZ-CASTRO,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. DC-F202200552**

## MEMORANDUM OPINION

After a jury trial, Alejandro Lopez-Castro was convicted of murder and sentenced to 45 years in prison. In five issues on appeal, Lopez-Castro contends that the evidence was insufficient to support his conviction for murder and that the trial court reversibly erred by denying his motion for directed verdict and admitting certain photographs into evidence. We affirm.

**Insufficient Evidence and Motion for Directed Verdict**

In his first, second, and third issues, Lopez-Castro argues that the evidence was insufficient to prove that he possessed the culpable mental state necessary to support his murder conviction. In his fourth issue, Lopez-Castro contends that the trial court erred by denying his motion for directed verdict based on a material variance between the indictment and the proof at trial. Because a challenge to the trial court's ruling on a motion for directed verdict is a challenge to the sufficiency of the evidence, we address Lopez-Castro's first, second, third, and fourth issues together. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990).

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported

by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Sufficiency of the Evidence of Lopez-Castro's Intent

In his first, second, and third issues, Lopez-Castro argues that the evidence was insufficient to prove that he possessed the requisite intent to commit murder under each of the three alternate methods set forth in the indictment.

RELEVANT LAW

A person commits first-degree murder if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt…the person commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

*See* TEX. PENAL CODE ANN. § 19.02(b).  When an indictment alleges multiple theories of murder involving the same victim, the different theories are not separate offenses, but alternative methods of committing the same offense.  *See Gamboa v. State*, 296 S.W.3d 574, 583-84 (Tex. Crim. App. 2009).  When the court's charge authorizes the jury to convict on alternative theories of murder and the jury returns a general verdict, we will uphold the verdict if the evidence is sufficient to support a guilty finding under any one of the theories submitted.  *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 2005).

DISCUSSION

The indictment in this case alleged three alternate theories of how Lopez-Castro murdered Jesus Munoz.[1]  *See* TEX. PENAL CODE ANN. § 19.02(b).  The trial court charged

---

[1] The indictment alleged that on or about May 15, 2022, Lopez-Castro did then and there:

[Paragraph One:] intentionally or knowingly cause the death of an individual, namely[,] Jesus Munoz, by striking Jesus Munoz with a vehicle,

Paragraph Two: with intent to cause serious bodily injury to an individual, namely[,] Jesus Munoz, commit an act clearly dangerous to human life that caused the death of Jesus Munoz by striking the [sic] Jesus Munoz with a vehicle,

Paragraph Three: commit or attempt to commit an act clearly dangerous to human life, namely[,] driving a vehicle into a crowd of people, that caused the death of Jesus Munoz, and the Defendant was in the course of intentionally and knowingly committing a felony, namely[,] aggravated assault with a deadly weapon,

the jury in the disjunctive on each of the three theories, and the jury returned a general verdict. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). We therefore need only determine whether there is sufficient evidence to support a finding of guilt under one of the theories submitted to the jury. *See Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992).

One of the theories of murder submitted to the jury was that Lopez-Castro intentionally or knowingly caused the death of Jesus Munoz by striking him with a vehicle. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Murder is a result-of-conduct offense. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). To prove the culpable mental state under this theory, the State must have shown that it was either Lopez-Castro's conscious objective or desire to cause the death of Jesus Munoz, or that Lopez-Castro was aware that his conduct was reasonably certain to cause the death of Jesus Munoz. *See* TEX. PENAL CODE ANN. §§ 6.03(a), 6.03(b), 19.02(b)(1).

Intent is a question of fact within the sole purview of the jury. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A jury may infer intent from any facts which tend to prove its existence. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). In determining a defendant's guilt, a jury may consider events that occurred before, during, and after the commission of an offense. *Hooper*, 214 S.W.3d at 13. Here, testimony

---

and the death of Jesus Munoz was caused while the Defendant was in the course of and in furtherance of the commission or attempt of the felony[.]

established that on the night of the offense, Lopez-Castro had a verbal altercation with Jesus Munoz and threatened to kill Jesus Munoz's dog if it did not stop barking. According to one witness, Jesus Munoz responded by stating that Lopez-Castro would have to kill him first before killing his dog. Some of the witnesses also described how Lopez-Castro challenged Jesus Munoz to a fight and threatened to "call my cousins and this is not going to stay like this."

The intent to kill may also be inferred from the use of a deadly weapon in a deadly manner. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Watkins v. State*, 333 S.W.3d 771, 781 (Tex. App.—Waco 2010, pet. ref'd). If a deadly weapon is used in a deadly manner, the inference of intent to kill is almost conclusive. *Id.* Though a motor vehicle is not a deadly weapon per se, it may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Here, testimony established that after threatening to bring his cousins to the residence, Lopez-Castro got into his truck, which was parked in the driveway, and slammed the door. A group of individuals, including Jesus Munoz, remained standing or sitting in the front yard near the residence. Witnesses described how Lopez-Castro hastily reversed his truck out of the driveway into the middle of the street, and then rapidly accelerated forward into the front yard, causing the truck's tires to screech. Lopez-Castro drove his truck into the group of people in the front yard, striking Jesus Munoz, Ana Karen Martinez, and Ana Laura Pacheco. Rather than

stopping, Lopez-Castro continued to drive through the yard and then fled the scene in his truck, striking a parked vehicle in the roadway during his flight. *See Newman v. State*, No. 05-16-00136-CR, 2017 Tex. App. LEXIS 2810, 2017 WL 1175436, at *5 (Tex. App.—Dallas Mar. 30, 2017, pet. ref'd) (mem. op.) (explaining that courts have found the requisite intent for murder when a driver causes an individual's death with a vehicle and drives away without stopping); *see also Pitonyak v. State*, 253 S.W.3d 834, 844-45 (Tex. App.—Austin 2008, pet. ref'd); *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (flight from the scene of an offense is indicative of a consciousness of guilt and is a circumstance from which an inference of guilt may be drawn). A few days after the offense, Lopez-Castro's truck was also found hidden behind a box trailer in tall grass. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (explaining that attempts to conceal incriminating evidence may be considered as indications of consciousness of guilt).

Intent to kill may also be inferred from the nature and extent of the injuries inflicted on the victim. *See Felder v. State*, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992). One of the responding officers described observing tire marks across Jesus Munoz's face and chest, and photographs consistent with this observation were admitted into evidence. The deputy medical examiner who performed the autopsy, Dr. Dana Hopson, testified that Jesus Munoz sustained multiple blunt force injuries, including several bruises, scrapes on the skin, and tears across multiple areas of his body. The examiner also noted

an injury to Jesus Munoz's forehead classified as a "patterned injury" and flattening of the forehead that corresponded to fractures of the skull. She described multiple skull fractures, bleeding in tissues beneath the scalp and inside of the brain, and lacerations of the brain due to the fractures. Jesus Munoz also sustained multiple severe injuries to his ribs and lacerations and contusions of the lung. The medical examiner ultimately ruled Jesus Munoz's death a homicide caused by multiple blunt force injuries sustained as a result of being struck by a motor vehicle.

Viewing the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to support a finding that Lopez-Castro intentionally or knowingly caused the death of Jesus Munoz by striking him with a vehicle. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

Accordingly, we overrule Lopez-Castro's first, second, and third issues.

<u>Motion for Directed Verdict Regarding Variance in Victim's Identity</u>

In his fourth issue, Lopez-Castro contends that the trial court erred by denying his motion for directed verdict based on an alleged material variance existing between the indictment and the proof at trial. He claims that the State failed to prove that he caused the death of "Jesus Munoz" as alleged in the indictment because an investigator for the medical examiner's office identified the decedent as "Jesus Sacramento Munoz Correa." We disagree.

RELEVANT LAW

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the evidence presented at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.*

In an evidentiary-sufficiency analysis, there are two types of variances: material and immaterial variances. *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014). A variance is material if it: (1) fails to adequately inform the defendant of the charge against him; or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018); *Gollihar*, 46 S.W.3d at 248-49. Only material variances will affect the hypothetically correct jury charge and render the evidence insufficient. *Gollihar*, 46 S.W.3d at 257. On the other hand, "[a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct [jury] charge." *Id.*

In addition to the foregoing, variances can occur in two different ways. *Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012). The first way—called a statutory variance—involves the statutory language that defines the offense and occurs when the State's proof at trial deviates from the statutory theory of the offense as alleged in the charging instrument. *See id.* at 294. The second way—called a non-statutory variance—

occurs when the State's proof deviates from a "non-statutory allegation that is descriptive of the offense in some way." *Id*. A non-statutory variance can be either material or immaterial, depending on whether it would result in a different offense than what the State alleged in the indictment. *Id.* at 294-98.

DISCUSSION

The alleged variance at issue in the present case is a non-statutory variance – a fact defining an allowable unit of prosecution. *See Johnson v. State*, 364 S.W.3d at 295-96; *Fuller v. State*, 73 S.W.3d 250, 257 (Tex. Crim. App. 2002) (Keller, P.J., concurring). The question is the identity of the individual killed by Lopez-Castro. Here, the indictment alleged that Lopez-Castro caused the death of "Jesus Munoz." At trial, after the State rested, Lopez-Castro's counsel moved for a directed verdict and argued, "I don't believe that any rational jury, or reasonable jury, can find my client guilty beyond a reasonable doubt by the fact that the testimony of the victim's – the victim's proper name is Jesus Munoz Correa." The trial court denied the motion. At trial, as he does now on appeal, Lopez-Castro based this argument on the testimony of one witness – Investigator Timothy Melcher, an investigator with the Johnson County Medical Examiner's Office – who identified the deceased individual at the scene. Using a government-issued identification card, Investigator Melcher identified the deceased as "Jesus Sacramento Munoz Correa."

When a person is known by two or more names, Texas Code of Criminal Procedure Article 21.07 allows the State to allege either name in the indictment. *See* TEX. CODE CRIM.

PROC. ANN. ART. 21.07. Further, in a murder case, the victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial. *Johnson v. State*, 364 S.W.3d at 295; *See Fuller v. State*, 73 S.W.3d at 257 (Kessler, P.J., concurring) ("For example, double jeopardy interests do not necessarily require proof of a murder victim's full name, or even the last name, so long as the victim is identified with sufficient particularity that a conviction or acquittal will serve as a jeopardy bar to any future prosecution for murdering that particular victim"); *see also Maldonado v. State*, 998 S.W.2d 239, 248 (Tex. Crim. App. 1999) (holding that a variance was not fatal where the indictment charged defendant with capital murder of Cruz C. Saucedo and evidence at trial showed the victim was known as Primo Correa Saucedo, but evidence also showed the victim was known by name charged in the indictment).

Here, multiple witness at trial testified that Lopez-Castro ran over "Jesus Munoz" with his truck in the front yard of 104 Huron Street. Investigator Melcher testified that he responded to 104 Huron Street on the date of the offense. He noted that there was an individual lying in the front yard who appeared to have been run over by a vehicle. After identifying the deceased individual at the scene as "Jesus Sacramento Munoz Correa," Investigator Melcher testified that he placed the decedent's body in a body bag, wrote the unique case number of 2209252 on the foot of the body bag, and then sealed the body bag for transport to the Tarrant County Medical Examiner's Office. Dr. Hopson, a Deputy

Medical Examiner for the Tarrant County Medical Examiner's Office, testified that she performed an autopsy on "Jesus Munoz." Dr. Hopson stated the autopsy was performed on the body inside of the sealed body bag marked with the unique case number of 2209252, and noted that she observed injuries to the body consistent with those on a person who was run over by a vehicle.

Further, defense counsel specifically cross-examined some of the State's witnesses about the various names the deceased individual was known by. In cross-examining Officer Macy Walker, defense counsel asked, "Throughout these reports[,] I see Jesus Correa, Jesus Munoz, Jose - - or Jesus Munoz Correa. Do we know what his last name really is?" Officer Walker responded that she believed the deceased individual's last name was Munoz, as he was identified as Jesus Munoz by his girlfriend. Defense counsel also asked Jose Luis Munoz, brother of the deceased, "That's Jesus Munoz Correa, the deceased?" to which Jose Luis Munoz responded in the affirmative. Jose Luis Munoz also referred to his brother as "Jesus Munoz" throughout his testimony. Because the evidence at trial showed the victim was known by both names, the State was permitted to identify him by either name in the indictment. We conclude that there was no material variance between the pleading and proof at trial, and that the evidence was sufficient to prove that Lopez-Castro caused the death of "Jesus Munoz" as alleged in the indictment.

Accordingly, we overrule Lopez-Castro's fourth issue.

**Admission of Photographs**

In his fifth issue, Lopez-Castro complains that the trial court abused its discretion in admitting 11 photographs of Jesus Munoz's body taken at the scene because the probative value of the photographs was greatly outweighed by unfair prejudice. *See* TEX. R. EVID. 403. We disagree.

STANDARD OF REVIEW

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. *Id.* Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the helpful aspects are substantially outweighed by the emotional and prejudicial aspects. *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004). Photographs depicting matters described by admissible testimony are generally admissible. *Id.* at 489.

Our analysis of the trial court's ruling pursuant to Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop

the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

We review the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). In this determination, we must do more than decide whether the trial court conducted the required balancing analysis between probative and prejudicial values. *Shuffield*, 189 S.W.3d at 787. We must also determine that the trial court's ruling is reasonable in view of all the relevant facts. *Id.*

DISCUSSION

Kassi Snider, a crime scene and property technician with the Cleburne Police Department, testified during the guilt-innocence phase of trial that she photographed the crime scene on the night of the offense. The State offered 11 photographs (State's Exhibits 31-41) taken by Snider at the scene that depicted Jesus Munoz's body lying on the ground.

Defense counsel objected that the photographs had no probative value because Lopez-Castro stipulated that driving his vehicle impacted the deceased and caused his death, and argued that the photographs were offered to inflame the minds of the jury. After reviewing the photographs, the trial court overruled defense counsel's objection. The State then published 8 of the photographs to the jury while questioning Snider.

The complained-of photographs illustrate the location and condition of Jesus Munoz's body when he was found at the scene and the extent of his visible injuries on different areas of his body. State's Exhibit 31 depicts the backside of Jesus Munoz's torso and head next to a pool of apparent blood. State's Exhibits 32 and 38 are close-up photographs of the injuries Jesus Munoz sustained to the back and side of his head. State's Exhibits 33, 34, 35, and 41 depict tire marks on Jesus Munoz's torso and chest at different angles and distances. State's Exhibits 36, 37, 39, and 40 are photographs of the injuries sustained by Jesus Munoz's to his face and head at different angles and distances. The body is clothed in all of the photos, though Jesus Munoz's shirt is raised in some of the photographs that depict the tire marks on his torso or the impressions on his back. The photographs appear to be size 8x11 inches.[2]

---

[2] We cannot determine from the record whether each of the complained-of photographs were color or black-and-white. The copies of the photographs in the record before this Court are black-and-white, but while questioning Snider during trial about State's Exhibit 33, the prosecutor referred to "the red stuff on the ground," which Snider testified "would presumably be blood." Regardless, we have considered how these photographs, if in color, might impact our analysis. We have determined that, even if the photographs were in color and showed the depicted bruising, cuts, scrapes, blood, and other injuries in greater and more graphic detail than the black-and-white copies before this Court, our conclusion would not change.

Lopez-Castro argues that the complained-of photographs should have been excluded because there was no fact dispute about the cause of Jesus Munoz's death and because some of the photographs are "near duplicates of others and cumulative." However, notwithstanding Lopez-Castro's effort to stipulate what the evidence shows, the State retained the burden to prove each of the essential elements of the charged offense, including the victim's cause of death, beyond a reasonable doubt. *See Old Chief v. U.S.*, 519 U.S. 172, 179 (1997) ("[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."). Although various witnesses testified about Jesus Munoz's injuries and cause of death, the Court of Criminal Appeals has held that "a visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination." *Gallo,* 239 S.W.3d at 762. "The fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction." *Id.* Further, Rule 403 does not require exclusion of all cumulative evidence; rather it requires exclusion if the probative value is substantially outweighed by the needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. Although the photographs are cumulative to the extent that they all show some aspect of Jesus Munoz's injuries, they are not needlessly cumulative in that they emphasize different points of interest and corroborate the testimony and observations made by both Investigator Melcher at the scene and Dr. Hopson during the autopsy.

Additionally, despite a defendant's stipulation to the cause of death, photographs may be probative to the element of intent. *Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Lopez-Castro's position at trial was that he might have been negligent or reckless in causing Jesus Munoz's death, but he never intended to kill or injure him. These photographs were relevant to the State's case because the extent of the injuries and the trauma to Jesus Munoz's body were probative of whether Lopez-Castro acted intentionally rather than with criminal negligence or recklessness. *See Ogle v. State*, No. 05-11-01493-CR, 2013 Tex. App. LEXIS 1084, 2013 WL 453257, at *3-7 (Tex. App.—Dallas Feb. 6, 2013, no pet.) (mem. op.) (finding, where intent was at issue in a murder case, that photographs showing the victim's external injuries after being run over by a vehicle were probative of the defendant's intent).

Moreover, "[i]f a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Erazo*, 144 S.W.3d at 489. The probative value of a photograph or videotape depicting the recovery of a murder victim's body may outweigh its prejudicial effect even when the depiction includes close-ups and lingering camera angles, so long as the images simply reflect the gruesomeness of the offense. *See Fields v. State*, No. 01-07-00856-CR, 2009 Tex. App. LEXIS 1932, 2009 WL 723992, at *13 (Tex. App.—Houston [1st Dist.] Mar. 19, 2009, pet. ref'd) (mem. op.) (citing *Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001)).

These complained-of photographs, while detailed and gruesome, are accurate reflections of the inflicted injuries "emanat[ing] from nothing more than what the defendant has himself done[.]" *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). Additionally, the State spent little time on these specific photographs during trial. We find nothing in the record to indicate that the photographs confused or distracted the jury or led the jury to decide the case on an improper basis. After considering the Rule 403 factors, we cannot say that the trial court abused its discretion by admitting State's Exhibits 31-41. *See* TEX. R. EVID. 403.

Accordingly, we overrule Lopez-Castro's fifth issue.

## Conclusion

Having overruled all of Lopez-Castro's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion issued and filed August 15, 2024
[CR25]

